Charles Tony Piccuta (258333)
Charles Albert Piccuta (56010)
PICCUTA LAW GROUP, LLP
400 West Franklin Street
Monterey, CA 93940
Telephone: (831) 920-3111
Facsimile:  (831) 920-3112
charles@piccutalaw.com
chuck@piccutalaw.com

Attorneys for Plaintiff
Trinidad Brown

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINIDAD BROWN, | Case No.: |
| Plaintiff, | Complaint Seeking Redress for Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 |
| v. | PLAINTIFF DEMANDS A TRIAL BY JURY |
| EDDIE DIAZ, ERIC HOWARD, LAERTIS MORAITIS and DANIEL VILLALOBOS, | |
| Defendants. | |

Plaintiff, Trinidad Brown ("Plaintiff"), alleges as follows:

## INTRODUCTION

1. This action arises from an unlawful arrest of Plaintiff on June 3, 2015, by police officers employed by the City of Stockton (hereinafter "City") and a subsequent malicious criminal prosecution of Plaintiff. Plaintiff is suing the Defendants in their individual capacities and demands a trial by jury.

2. On June 3, 2015, acting under color of law and within the scope of his employment, Defendant Eric Howard, subjected Plaintiff to unreasonable force in violation of his rights arising under the Fourth Amendment of the United States Constitution. The use of excessive and unreasonable force by Defendant Eric Howard rendered Plaintiff's arrest unlawful.

3. Following the aforementioned false arrest, Defendants, acting under color of law and within the scope of their employment, knowingly caused false criminal charges to be filed against Plaintiff hoping to insulate Defendant Howard from civil liability and to block and deter Plaintiff from exercising his Constitutional right to seek redress.

**JURISDICTION AND VENUE**

4. This court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

5. The acts and omissions giving rise to Plaintiff's claims occurred within the territorial limits of the County of San Joaquin. Therefore, the appropriate venue for this action is in the United States District Court for the Eastern District of California located in Sacramento.

**STATEMENT OF FACTS**

6. At approximately 12:20 AM on June 3, 2015, Defendants Officer Daniel Villalobos ("Villalobos") and Officer Laertis Moraitis ("Moraitis") were on patrol. The two officers initiated a traffic stop of Plaintiff claiming that he had made an unsafe lane change while operating his sport utility vehicle.  After pulling Plaintiff over, Villalobos parked the patrol car at angle to the curb and behind Plaintiff's vehicle.  Both Moraitis and Villalobos got out of the patrol car and eventually talked with Plaintiff while he was sitting in the driver's seat of his vehicle.

7. Moraitis got out of the patrol car first. Moraitis stationed himself in a "cover" position on the passenger side of Plaintiff's vehicle.  He stood approximately even with the rear door on that side but far enough away from Plaintiff's vehicle to allow him to keep Plaintiff under surveillance.

8. Villalobos walked up to the driver's side window, which was open halfway, and asked Plaintiff for his driver's license, registration and proof of insurance.  Plaintiff gave Villalobos his driver's license. Plaintiff told Villalobos he had the other items but he couldn't find them because his SUV was "junky", i.e., too much personal property.  Villalobos told

Plaintiff to look for the registration and proof of insurance. Villalobos further told Plaintiff that if the records check was clean, he intended to give Plaintiff a warning not a citation.  Leaving Plaintiff to look for the registration and proof of insurance, Villalobos returned to the patrol car to "run" a records check on Plaintiff based on the information provided by his driver's license. Moraitis remained in his cover position.

9. Villalobos returned to his patrol car to use the on board computer to run Plaintiff's license.  Meanwhile Plaintiff began rummaging through his personal property looking for the registration and proof of insurance. Plaintiff also rolled down the front passenger window and turned toward that side of Plaintiff's vehicle and asked Moraitis why they had pulled him over.

10. At or about this same time, Defendants Officer Eddie Diaz ("Diaz") and Eric Howard ("Howard") arrived in another patrol car. They parked behind the patrol car Villalobos was in.

11. Upon arriving, Howard immediately got out of the patrol car and walked up behind and close to Moraitis.  Less than 30 seconds later and without discussing the details of the situation with either Moraitis or Villalobos, Howard removed his sidearm from its holster and made his way around the back end of Plaintiff's vehicle and up to the driver's door. Intending, one way or another, to get Plaintiff out of the vehicle, Howard grabbed and pulled the handle of the driver's door and tried to open it.  The door was locked.

12. Hearing Howard's effort to open the door, Plaintiff, who was still facing the passenger side, turned back around toward the driver's side of his vehicle. At that moment Howard stuck his gun over the top of the halfway open window.  Holding the muzzle inches from Plaintiff's forehead, Howard told Plaintiff to get out of the vehicle because he was under arrest.  Plaintiff nervously told Howard he was not going to get out of his vehicle with a gun in his face. Howard withdrew his gun.

13. Plaintiff's vehicle was equipped with electric windows. The driver's side window is fitted with an automatic switch. Once the automatic switch is activated the window opens or closes without further assistance. Immediately after Howard withdrew his gun, Plaintiff, fearing for his safety, activated the switch to roll up the window. As the window was closing, Howard quickly pulled out his taser and stuck it over the top of the closing window.

14. With his hand and the taser now just on the other side of the driver's window glass, Howard told Plaintiff if he didn't get out of the vehicle, he would tase him in his face. A split second later, as Plaintiff turned away toward the center console of the front passenger seat, Howard fired his taser. Two darts struck Plaintiff.

15. Shortly after being tased, Plaintiff unlocked the front passenger door. He fell to the floor and urinated on himself. Defendants Diaz and Moraitis dragged Plaintiff out of the SUV through the passenger side front door. They made fun of his incontinence as they handcuffed him. Because he was unable to walk Diaz and Moraitis dragged him back to the patrol car Howard and Diaz had arrived in. They threw Plaintiff into the back seat.

16. Because Plaintiff had been tased, Diaz and Howard took him to the hospital for examination and removal of the taser darts. Diaz and Howard then transported Plaintiff to the County Jail for booking. Plaintiff was falsely arrested for resisting arrest.

17. Plaintiff was charged with a violation of Penal Code section 148, subdivision (a)(1), resisting a peace officer. In June 2016, following a trial by jury, Plaintiff was found not guilty.

**First Cause of Action**

**Violation of Civil Rights - 42 U.S.C. 1983**

**(Against EDDIE DIAZ, ERIC HOWARD and LAERTIS MORAITIS)**

**(Unlawful Arrest, Search and Seizure/Unreasonable Use of Excessive Force)**

18. Plaintiff re-alleges and incorporates herein by this reference thereto all the allegations in paragraphs 1 - 17 as set forth above as if the same were repeated verbatim herewith.

19. At all relevant times herein described, the conduct of defendants Diaz, Howard and Moraitis was subject to 42 U.S.C. §1983. At all relevant times herein described, Plaintiff had the right to be secure in his person and effects against unreasonable searches and seizures, and unreasonable use of force via the Fourth and Fourteenth Amendments of the United States Constitution. The force applied by Howard was excessive, unnecessary and unreasonable under the totality of the circumstances.

20. Acting under color of law, authority, customs and usage, defendants Diaz, Howard and Moraitis deprived Plaintiff of his rights, privileges, and immunities as guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States, via their conduct described herein above.

21. Defendants Diaz, Howard and Moraitis acted intentionally and their malfeasance and wrongful arrest and imprisonment of Plaintiff was a substantial factor in causing him the harm hereinafter alleged.

22. The conduct of defendants Diaz, Howard and Moraitis was outrageous, despicable, malicious, oppressive and done with a reckless disregard of the effect that it would have and did have on Plaintiff.

**Second Cause of Action**

**Malicious Prosecution in Derogation of Plaintiff's Constitutional Rights Under the U.S. Constitution**

**(Against All Defendants)**

23. Plaintiff realleges and incorporates by reference paragraphs 1 through 17 of this Complaint.

24. At all relevant times herein, Defendants were sworn peace officers of the City and acted within the scope of their authority and pursuant to their duties as peace officers for the City. Defendants knowingly caused false criminal charges to be filed against Plaintiff, as part of their pattern of abusing their authority.

25. Between June 3, 2015 to on or about June 6, 2016, Defendants maliciously initiated, sought, maintained, encouraged and facilitated, a criminal prosecution of Plaintiff for the untrue-but-claimed violation of Penal Code §148(a)(1) by the San Joaquin County District Attorney's Office.

26. Defendants conspired and agreed among themselves to punish Plaintiff and justify Howard's blatantly excessive use of force. In furtherance of their agreement, Defendants fabricated evidence, misled prosecutors, falsely reported the incident and committed perjury with the improper purpose of procuring said criminal prosecution, maintaining said criminal prosecution, and/or in completing the criminal prosecution by which Plaintiff was seized, arrested, imprisoned, charged, and unsuccessfully tried.

27. The fabrication of evidence and false reporting of the incident played a material role in Plaintiff's arrest for the asserted violation of Penal Code §148(a)(1) and the subsequent criminal prosecution and was in retaliation for Plaintiff's exercise of his Constitutional rights and/or to cover-up Defendants' own intentional misconduct.

28. At no time did any Defendant correct the false reporting, report the true events to a supervising offer or file a supplemental report detailing what actually happened as they all had a duty to do.

29. As a natural and expected cause of the fabricated criminal charges unlawfully instigated, supported and maintained by Defendants, Plaintiff was damaged by the loss of his Constitutional rights and he endured substantial mental pain and suffering in defending himself within the criminal justice system including, but not limited to, worry, stress and anxiety

30. The acts of Defendants were willful and malicious, and motivated by a desire to harm Plaintiff. Defendants' malfeasance is particularly odious because Defendants are public

///

servants trusted to serve and protect members of the public, including Plaintiff. Such acts, therefore, justify an award of punitive damages against each of them.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Trinidad Brown demands judgment against Defendants, and each of them, jointly and severally, (except as to punitive damages) as follows:

1. For all available and appropriate general and special damages according to proof at trial but in an amount no less than $250,000.00;

2. Punitive damages against each Defendant in amount sufficient to punish and deter them for similar conduct in the future according to proof at trial;

3. Pre-judgment interest pursuant to law;

4. Costs and attorney's fees;

5. Such other relief as the Court deems just and proper.

DATED: June 1, 2017	PICCUTA LAW GROUP, LLP

_____/s/ *Tony Piccuta*_____
Charles Tony Piccuta
Attorneys For Plaintiff
Trinidad Brown