1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TRINIDAD BROWN,                          No.  2:17-cv-01157-KJM-AC

12              Plaintiff,                     ORDER

13        v.

14   EDDIE DIAZ, et al.,

15              Defendants.

16

17            In this civil rights case arising out of an altercation between defendant police

18   officers and plaintiff Trinidad Brown, defendants move for summary judgment of all claims.  For

19   the reasons below, the court DENIES the motion.

20   I.    BACKGROUND

21        A.    Factual Background

22            The following facts derive from both parties' statements of undisputed facts, the

23   parties' responses to those statements, evidence cited in those statements, and the court's review

24   of the record.  *See* Def.'s Reply re: Undisputed Facts ("UF"), ECF No. 62-1; Piccuta Decl., ECF

25   No. 59-2.  Where the court cites directly to defendants' statement of undisputed facts, the facts

26   are undisputed, except where noted.

27

28

1   Brown's claims against defendant Officer Howard[1] arise from a June 3, 2015

2   altercation, which began when Officers Villalobos and Moraitis stopped Brown for making an

3   unsafe lane change.  UF 2, 6.  Villalobos approached Brown's vehicle and asked him to produce

4   his license, registration and proof of insurance.  UF 10.  Brown provided his license and proof of

5   insurance, but could not find his registration.   UF 11.  Officer Villalobos returned to his patrol

6   unit to run a warrant check; Brown searched in his center console, glovebox and back seat.  UF

7   13, 21.  During this time, Officer Moraitis was standing at the rear passenger side of Brown's

8   vehicle in a "cover" position to observe for officer safety.  UF 12.  According to Officer

9   Villalobos' testimony, Brown was calm when he spoke with him, Superior Court Trial Tr. ("Trial

10   Tr."), ECF No. 59-2, Ex. C. at 13:14–17,[2] and Villalobos perceived he had the situation

11   completely under control while he was running the identification check, Villalobos Dep., ECF

12   No. 59-2, Ex. A at 60:13–16.

13   Though Officer Villalobos never expressly called for backup, Villalobos Dep. at

14   11:5–10, a second patrol unit consisting of Officers Howard and Diaz arrived, UF 14.  Officer

15   Howard got out of his patrol vehicle, passing Officer Villalobos, and approached the area where

16   Officer Moraitis was standing.  UF 15, 16.  Brown was conversing with Officer Moraitis

17   regarding the reason for the stop; Brown stated to Officer Moraitis, "this is some bullshit why I'm

18   getting pulled over."  UF 18, 19.  Officer Moraitis testified that, if he had perceived a safety

19   threat, he would have had his firearm out at that time, but he did not have his firearm out.

20   Moraitis Dep., ECF No. 59-2, Ex. F at 31:13–18.  At some point, Officer Howard observed

21   Brown reaching into his center console, and, soon afterwards, Howard drew his firearm.  UF 25

22   (undisputed as relevant).  Officer Howard approached the driver's side of Brown's vehicle, with

23   his gun drawn, UF 27 (disputed as to how Howard approached the vehicle and as described

[1] Only defendant Howard moves for summary judgment.  Plaintiff represents he has agreed to dismiss the remaining defendants "as discovery did not reveal they were complicit in the violations committed by Howard."  Opp'n, ECF No. 59, at 6 n.1.  Accordingly, the court focuses only on defendant Howard's actions.

[2] All citations to page numbers of depositions refer to the internal pagination of the document, but citations to all other filings refer to the pagination assigned by the court's ECF system and not to the internal pagination of the original document.

2

below), and attempted to open the driver's side door, but the door was locked, UF 28.  Brown

contends Officer Howard pointed his firearm at Brown's head and told Brown he was "under

arrest for fidgeting."  Brown Dep., ECF No. 59-2, Ex. B at 48:10–24, 51:19–52:9; Howard Dep.,

ECF No. 51-3, Ex. 2 at 46:18–22 (testifying he did not point the firearm at Brown).  According to

Brown's testimony, Brown then volunteered he did not think he should have to exit the vehicle.

Brown Dep. at 54:5–10.  Brown then slammed his hands on the steering wheel and began rolling

up his car window.  UF 33–35 (undisputed in relevant part).  Seeing that plaintiff did not have

anything in his hands, Officer Howard holstered his gun and drew his taser.  UF 38, 52–53

(disputed only as to whether Howard ever had reason to believe plaintiff had a weapon); Howard

Dep. at 120:10–121:5.  He put the taser through the opening of the driver's side window as

Brown was rolling the window up, causing the taser, with Officer Howard's finger on the trigger,

to become stuck in the window of Brown's vehicle.  UF 38–39.

       With his taser pointed at Brown through the window, Officer Howard told Brown

at least once to get out of the vehicle or he was going to taser him.  UF 40 (undisputed as

relevant).  According to Brown, this was the first time Officer Howard ordered him to get out of

the car.  Brown Dep. at 54:20–22.  Officer Howard disputes this.  *See* Howard Dep. at 66:13–23

(testifying he asked Brown to exit his vehicle a couple of times before the taser was through the

window).  Officer Howard says Brown then "dove" towards the passenger seat of his vehicle, UF

41 (disputed) (citing Brown Dep. at 64:11–24; Howard Dep. at 65:13–66:6, 77:5–9) ; Brown

states that, once he saw the taser light "get activated," he "dove" to try and "get away from it,"

Brown Dep. at 64:11–24.  Officer Howard discharged the taser onto Brown and "cycled" it once,

meaning current ran through the taser's probes one time, while attached to Brown's body.  UF 47

(undisputed in relevant part).  Brown maintains that when he was tasered, he was "sitting in the

driver seat facing the driver window, looking at the taser."  Brown Dep. at 65:13–25.  Officer

Moraitis also testified that Brown was "sitting in the driver seat" prior to being tasered.  Moraitis

Dep. at 38:12–14.

       After Brown was tasered, Moraitis commanded Brown to unlock the door and exit

the vehicle, and Brown complied.  UF 48.  Brown exited the vehicle and was placed under arrest

1    for violating California Penal Code section 148(a)(1) (resisting arrest).[3]  UF 49.  Brown was

2    prosecuted for conduct arising out of this arrest, including a violation of section 148(a)(1) and

3    possession of cocaine; at trial a jury acquitted him.  UF 57–58.

4                 Brown contends Officer Howard made false allegations in the police report that

5    led to the criminal charges against Brown, including in alleging that cocaine was found in

6    Brown's vehicle.  UF 61.

7          B.    Procedural Background

8                 Brown filed the operative first amended complaint on October 2, 2018, alleging

9    violations of his civil rights by Officers Diaz, Howard, Moraitis and Villalobos.  Brown's claims

10   against Officer Howard include a claim for malicious prosecution and the following claims under

11   42 U.S.C. § 1983: (1) unlawful arrest in violation of the Fourth Amendment, (2) excessive force

12   in violation of the Fourth Amendment, and (3) retaliation in violation of the First Amendment.

13   First Am. Compl. ("FAC") ¶¶ 20–32, ECF No. 45.  Defendant Howard moves for summary

14   judgment on all of Brown's claims against him.  Mot., ECF No. 51.  Brown opposes, ECF No. 59,

15   and Howard has responded, ECF No. 62.  The court held a hearing on the motion on February 8,

16   2019 and resolves it here.

17   II.   LEGAL STANDARD

18                A court will grant summary judgment "if . . . there is no genuine dispute as to any

19   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

20   The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

21   resolved only by a finder of fact because they may reasonably be resolved in favor of either

22   party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

23

24          [3] California Penal Code section 148(a)(1) provides as follows:

25          Every person who willfully resists, delays, or obstructs any public
            officer . . . in the discharge or attempt to discharge any duty of his
26          or her office or employment, when no other punishment is
            prescribed, shall be punished by a fine not exceeding one thousand
27          dollars ($1,000), or by imprisonment in a county jail not to exceed
            one year, or by both that fine and imprisonment.
28

4

As a general matter, the moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88 (citation omitted); *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Where a genuine dispute exists, the court draws inferences in the plaintiff's favor. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).

The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*,

1   No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at

2   572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

3   III.    ANALYSIS

4          A.    Excessive Force Claim – Fourth Amendment

5                 Officer Howard seeks summary judgment on Brown's claim for excessive force in

6   violation of the Fourth Amendment, based on Officer Howard's use of his firearm and his use of

7   a taser on Brown.  Mot. at 13–22.  Officer Howard asserts Brown's claim fails as a matter of law

8   and that he is entitled to qualified immunity.  *Id.*  The court first analyzes the merits of the claim

9   and then addresses the second qualified immunity prong in a separate section below.  *Pearson v.*

10  *Callahan,* 555 U.S. 223, 236 (2009) (it is "often beneficial" to begin with first part of test because

11  it "promotes the development of constitutional precedent and is especially valuable with respect

12  to questions that do not frequently arise in cases in which a qualified immunity defense is

13  unavailable").

14                 1.    Merits of Excessive Force Claim

15                 The guarantees of the Fourth Amendment include protection from the use of

16  excessive force by law enforcement officials "in the course of an arrest, investigatory stop, or

17  other 'seizure' of a free citizen[.]"  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  "All claims of

18  excessive force, whether deadly or not, are analyzed under the objective reasonableness standard

19  of the Fourth Amendment as enunciated in *Graham* and *Garner*."  *Blanford v. Sacramento Cty.*,

20  406 F.3d 1110, 1115 (9th Cir. 2005).  This standard requires the court to "balance the nature and

21  quality of the intrusion on the individual's Fourth Amendment interests against the importance of

22  the governmental interests alleged to justify the intrusion."  *Tennessee v. Garner*, 471 U.S. 1, 8

23  (1985) (citation omitted).  In striking this balance here, the court "must consider the risk of bodily

24  harm that [defendant's] actions posed to [Brown] in light of the threat to the public that

25  [defendant] was trying to eliminate."  *Scott v. Harris*, 550 U.S. 372, 383 (2007).  The court pays

26  "careful attention to the facts and circumstances of each particular case, including [1] the severity

27  of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the

28  officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade

6

1  arrest by flight." *Graham*, 490 U.S. at 396.  "Because this inquiry is inherently fact specific, the

2  'determination whether the force used to effect an arrest was reasonable under the Fourth

3  Amendment should only be taken from the jury in rare cases.'"  *Green v. City and Cty. of San*

4  *Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (quoting *Headwaters Forest Def. v. Cty. of*

5  *Humboldt*, 240 F.3d 1185, 1205–06 (9th Cir. 2000) *vacated on other grounds by Cty. of*

6  *Humboldt v. Headwaters Forest Def.*, 534 U.S. 801 (2001)).

7            "The 'reasonableness' of a particular use of force must be judged from the

8  perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

9  hindsight." *Graham*, 490 U.S. at 396 (citation omitted).  Further, "the calculus of reasonableness

10  must embody allowance for the fact that police officers are often forced to make split-second

11  judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount

12  of force that is necessary in a particular situation." *Id.* at 396–97.  "Therefore, courts 'are free to

13  consider issues outside the three enumerated [in *Graham*] when additional facts are necessary to

14  account for the totality of circumstances in a given case.'"  *Velazquez v. City of Long Beach*, 793

15  F.3d 1010, 1024 (9th Cir. 2015) (alteration in original) (quoting *Mattos v. Agarano*, 661 F.3d 433,

16  441 (9th Cir. 2011) (en banc)).

17                  a.      Nature of Intrusion on Brown's Fourth Amendment
18                          Interests

19                          i.      Firearm Use

20            According to Brown, Officer Howard pointed his firearm at Brown's head while

21  Brown was seated in his vehicle during a routine traffic stop.  *See* UF 51; Brown Dep. at 48:10–

22  24.  Officer Howard concedes that "brandishing a firearm, with its attendant threat of bodily harm

23  and death, is considered a high level of force[.]"  Mot. at 15; *see Espinosa v. City & Cty. of San*

24  *Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (affirming denial of summary judgment on

25  excessive force claim, in part because "pointing a loaded gun at a suspect, employing the threat of

26  deadly force, is use of a high level of force"), *abrogated on other grounds by Cty. of Los Angeles,*

27

28

1 *Calif. v. Mendez*, 137 S. Ct. 1539 (2017).  By pointing a gun at Brown's head, Officer Howard

2 effected a severe intrusion upon Brown's Fourth Amendment rights.

3 ii.      Taser Use

4       Additionally, it is undisputed that Officer Howard deployed his taser on Brown,

5 and that the taser cycled one time.  UF 47.[4]  The parties agree that the taser was deployed in

6 "dart-mode."  Mot. at 9; Opp'n at 9 (citing UF 47).  The parties agree the use of the Taser in dart-

7 mode, cycled once, is a "significant" or "intermediate" level of force.  Mot. at 17 (citing *Sanders*

8 *v. City of Fresno*, 551 F. Supp. 2d 1149, 1168 (E.D. Cal. 2008)); Opp'n at 20 (citing *Bryan v.*

9 *MacPherson*, 630 F.3d 805, 825–26 (9th Cir. 2010) (Tasers "used in dart-mode constitute an

10 intermediate, significant level of force that must be justified by the governmental interest

11 involved.")).  Officer Howard's use of the taser on dart mode was an intermediate, significant

12 intrusion upon Brown's Fourth Amendment interests.

13 b.      Governmental Interests

14       The court analyzes the governmental interests at stake in this case with reference

15 to the *Graham* factors.  As explained below, genuine disputes of material fact prevent the court

16 from finding, as a matter of law, that Officer Howard's use of the firearm and his use of the taser

17 were reasonable.

18 i.      Severity of Crime

19       Officer Howard concedes that, to his knowledge, the severity of any crimes Brown

20 may have committed at the times Officer Howard used his gun and his taser were "not serious in

21 nature."  Mot. at 17 ("At the time Officer Howard deployed his taser, Plaintiff had committed two

22 crimes—a traffic infraction and a misdemeanor violation of Penal Code 148(a)(1)," but "[t]hese

23 crimes are not serious in nature."); *see also Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1165

24 (9th Cir. 2011) ("[W]hile disobeying a peace officer's order certainly provides more

25 justification for force than does a minor traffic offense, such conduct still constitutes only a non-

26

27 _____

28     [4] For the remainder of this order, where the court cites to Undisputed Facts without reference to the underlying evidence, the fact is undisputed in relevant part.

8

1    violent misdemeanor offense that will tend to justify force in far fewer circumstances than more

2    serious offenses, such as violent felonies.").

3                                    ii.      Threat to Safety

4           "The second factor—whether the suspect posed an immediate threat—is the most

5    important." *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016).  Here, there is a

6    factual dispute that prevents the court from finding as a matter of law at this stage that Brown's

7    actions would have made a reasonable officer believe Brown was a threat to the officer's safety.

8                                    (A)      Firearm Use

9           Construing the record in Brown's favor as required, a reasonable jury could

10   conclude that a reasonable officer would not have perceived a threat to safety preceding his use of

11   his firearm.  According to Brown's deposition, "right after Villalobos walked off" to run a license

12   check, Brown reached into the back seat "[b]ecause when I pulled out my registration out of the

13   center console, there was a lot of papers.  So I was trying to pick the papers that fell behind there

14   because I was trying to find my registration that he asked me to retrieve."  Brown. Dep. at 86:2–

15   12.  Brown states he was conversing with Officer Moraitis about why he had been pulled over

16   immediately before Officer Howard confronted Brown with his gun.  Brown Dep. at 48:10–24.

17   Officer Howard testified that, because of Brown's demeanor and the fact that he was reaching

18   into his center console, he suspected Brown was reaching for a weapon and was a threat to officer

19   safety.  Howard Dep. at 46:8–17.  However, based on the scene plaintiff describes, a jury could

20   conclude a reasonable officer would not perceive a threat to safety.

21                                   (B)      Taser Use

22          Additionally, if plaintiff's evidence is credited, the evidence could support the

23   conclusion Brown posed little or no threat to Officer Howard once the officer holstered his

24   firearm and drew his taser.  Officer Howard argues Brown's actions were threatening because he

25   ignored the officer's command to exit the vehicle, he had caused Officer Howard's weapon and

26   hand to be caught in the window, and most importantly, he "lunged towards the passenger seat of

27   the vehicle causing Officer Howard to reasonably conclude he may be diving to retrieve a

28   weapon."  Mot. at 18.

                                                  9

1    As to the first argument, Officer Howard does not adequately explain how

2    noncompliance with an order, alone, would necessarily constitute a threat to officer safety.  *See*

3    *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010) (analyzing the third *Graham* factor as

4    part of balancing test, in addressing whether suspect was resisting arrest; distinguishing between

5    "active" and "passive" resistance and noting that passive noncompliance with an order is not a

6    strong justification for use of force).

7    As to the second argument, it is technically undisputed that Officer Howard's taser

8    "and his finger" became stuck in the window of Brown's vehicle.  *See* UF 39 (undisputed).

9    However, at hearing, the parties clarified that, here, the officer's finger was not at risk of being

10    severed, but was "stuck" only insofar as his hand was around the taser, and the *taser* was wedged

11    between the top of the window and the frame of the car.  Similarly, in his deposition, Officer

12    Howard does not state any part of his body was actually trapped by the window.  Howard Dep. at

13    58:25–59:14 (testifying the "fore-portion" of the taser, akin to the barrel of a handgun, "got

14    pinched between the window and the window frame").  Therefore, it appears there is at least a

15    dispute of material fact as to whether any part of the officer's body was stuck in the window.  The

16    most closely analogous cases available finding an officer reasonably felt threatened involve

17    situations in which an officer's hand or arm was actually stuck in a window, rendering the officer

18    somewhat incapacitated.  *See Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir.

19    2004) (objectively reasonable for officer to perceive immediate safety threat where his arm was

20    "trapped in the window" of plaintiff's car); *Mazoch v. Carrizales*, 733 F. App'x 179, 183 (5th Cir.

21    2018) (analyzing threat to officer safety when plaintiff rolled car window up, trapping officer's

22    arm, and causing officer to be dragged alongside moving vehicle).  Defendants do not offer a

23    sufficient explanation for why the taser getting stuck in the window justifies the use of force here.

24    Finally, as to Officer Howard's third argument, there is also a genuine dispute as

25    to whether plaintiff "lunged" to the passenger side of the vehicle before being tasered in such a

26    way as to cause a reasonable officer to feel a safety threat, or whether he dove away from the

27    taser as it was being deployed.  *See* Howard Dep. at 65:13–66:6 (stating Brown dove or leaned

28    over the center console and reached under the front seat of the passenger side, causing Officer

10

Howard to believe he was searching for a weapon), 77:5–9 (confirming that he deployed his taser as a result of Brown "going to the passenger floorboard"); Brown Dep. at 64:11–24 (stating that, once he saw the taser light "get activated," he "dove" to try and "get away from it").  This conflicting testimony creates a genuine dispute of material fact over whether Brown's actions immediately preceding the taser deployment would have caused a reasonable officer to perceive a safety threat.

Accordingly, as to both instances of Officer Howard's use of force, the disputes of material fact preclude the court's finding that, as a matter of law, Brown posed a threat to safety sufficient to justify the force used.

iii.    <u>Active Resistance</u>

Resistance is not "a binary state, with resistance being either completely passive or active.  Rather, it runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer." *Bryan*, 630 F.3d at 830.  "While 'purely passive resistance can support the use of some force, [] the level of force an individual's resistance will support is dependent on the factual circumstances underlying that resistance.'" *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091 (9th Cir. 2013) (quoting *Bryan*, 630 F.3d at 830) (alteration in original).  The parties dispute Brown's level of resistance to Officer Howard.  These factual disputes, all of which require a trier of fact to make credibility determinations, also preclude a dispositive finding at summary judgment about Brown's level of "active resistance."

(A)    <u>Firearm Use</u>

Plaintiff has offered evidence that Officer Howard did not command Brown to do anything before pointing a gun at his head.  Brown Dep. 54:20–22 (testifying that Officer Howard did not ask him to get out of the car at any time prior to plaintiff seeing the taser).  According to the operative complaint, while Officer Howard still had his gun out, "Howard told Plaintiff to get out of the vehicle because he was under arrest," and Brown told him "he was not going to get out of his vehicle with a gun in his face."  FAC ¶ 12.  However, in his deposition, Brown was asked if Officer Howard ever asked him to exit the vehicle prior to pulling out the taser, which occurred after Officer Howard had already re-holstered his gun, and he replied "no."  Brown Dep. at

11

54:20–22.  Defendant correctly points out that plaintiff's factual assertions in the complaint are

generally binding unless he amends the pleading.  Reply at 5 n.1 (citing *Am. Title Ins. Co. v.*

*Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)).  At hearing, counsel for plaintiff admitted that

when he drafted the complaint, he made an error in paragraph 12, and argued that his client

should not be prejudiced by his counsel's drafting error.  The court finds it would be inequitable

and unduly prejudicial to Brown's interests to hold him to the exact factual assertions made in

paragraph 12 of his complaint for the purpose of resolving summary judgment.  Therefore, the

court assumes, for the purpose of this motion, that Howard first gave Brown an order after he

drew his taser.  *See* Brown Dep. 54:20–22.

Viewing the evidence in the light most favorable to the plaintiff, plaintiff was not

resisting anything at the time Officer Howard pointed his firearm, because he had not been

ordered to do anything.

(B)     Deploying Taser

According to plaintiff's evidence, once Officer Howard pulled out hist taser but

before he deployed it, Brown only resisted an officer's order in that he did not comply with

Officer Howard's commands to exit the vehicle and he expressed his disagreement with the idea

that he had to exit the vehicle.  Brown Dep. at 54:5–10, 54:20–22, 63:13–64:1.  Expressing

disagreement with an officer's order and not immediately complying qualifies as only minimal

resistance.  "[A] failure to fully or immediately comply with an officer's orders neither rises to

the level of active resistance nor justifies the application of a non-trivial amount of force."  *Lopez*

*v. City of Imperial*, No. 13-CV-00597-BAS WVG, 2015 WL 4077635, at *15 (S.D. Cal. July 2,

2015); *Young*, 655 F.3d at 1165 (arrestee's repeated refusal to reenter vehicle at officer's

command not active resistance).  According to Brown, Officer Howard had not made a command

at the time he rolled up the car window, Brown Dep. at 54:20–22 (testifying Officer Howard told

him to exit the vehicle for the first time while the taser was stuck through the car window),

56:11–14 (testifying he began rolling the window up when Officer Howard put down his gun and

removed his taser), therefore the act of rolling up the window does not appear to be in resistance

to any command or attempted arrest, drawing all reasonable inferences in plaintiff's favor.

12

1    In sum, viewing the evidence in the light most favorable to Brown, he was likely

2 passively resisting arrest, but not actively resisting, which is not a strong justification for a

3 significant use of force. *Bryan*, 630 F.3d at 830 (finding more passive resistance is less

4 justification for the use of force); *Lopez*, 2015 WL 4077635, at *15.

5                                    iv.    Other Factors

6    As noted above, "the *Graham* factors are not exclusive." *Vos v. City of Newport

7 Beach*, 892 F.3d 1024, 1033–34 (9th Cir. 2018).  Courts may consider other factors, including, as

8 relevant here, "the availability of less intrusive force" and "whether proper warnings were given."

9 *Id.* (citing *Bryan*, 630 F.3d at 831; *Deorle v. Rutherford*, 272 F.3d 1272, 1282–83 (9th Cir.

10 2001)).

11    First, a reasonable jury could conclude that less intrusive force was available at the

12 time Officer Howard drew his gun, because he later holstered the gun and used his taser.  *See

13 White v. Cty. of San Diego*, No. 13-CV-1166-MMA RBB, 2014 WL 9859196, at *8 (S.D. Cal.

14 Dec. 12, 2014) (genuine issue of material fact existed regarding whether less intrusive means of

15 force were available where one defendant had access to taser and drew it briefly before switching

16 to his gun).

17    Second, according to Brown, Officer Howard warned him at least once that he

18 might be tasered if he did not exit the vehicle.  Brown Dep. 63:16–64:1 (testifying that Officer

19 Howard told him to get out of the car or he was going to tase him).  Officer Howard's warning

20 counsels against a finding of excessive force.  *See Lowry v. City of San Diego*, 858 F.3d 1248,

21 1259 (9th Cir. 2017) (noting "an important consideration in evaluating the City's interest in the

22 use of force is "whether officers gave a warning before employing the force" and finding issuance

23 of multiple warnings weighed against finding excessive force).

24    On balance, the other *Graham* factors relevant here do not so strongly tip the

25 scales as to provide justification for Officer Howard's uses of force.

26                                    c.    Summary

27    For the foregoing reasons, multiple genuine disputes of material fact, including

28 over the extent of Brown's resistance, whether he reached over into the passenger seat before

13

1    being tased, and when and how many times Officer Howard issued any commands, preclude this

2    court's ruling as a matter of law in Howard's favor on Brown's excessive force claim.

3                                2.       Qualified Immunity from Excessive Force Claim

4                      Defendant Howard also contends he is entitled to qualified immunity on plaintiff's

5    Fourth Amendment excessive force claim because (1) "the state of the law as of June, 2015 did

6    not clearly establish that briefly pointing a gun at a suspect during a nighttime encounter wherein

7    the suspect is making furtive movements within his vehicle and is agitated was unconstitutional,"

8    Mot. at 21, and (2) "tasing Brown once to neutralize the potential threat and effect his exit from

9    the vehicle did not violate a clearly established right," *id.* at 22.  To the contrary, plaintiff

10   contends it was clearly established that (1) there exists a "right to be free from arrest at gunpoint

11   absent probable cause," Opp'n at 33, and (2) "an unarmed traffic detainee who presents no

12   imminent safety concern has a right to be free from non-trivial force, e.g., a taser in dart-mode,

13   even if he engages in minor resistance," *id.* at 35.

14                                a.       Background and Two-Pronged Test

15                     "Qualified immunity is a judge-made doctrine designed to 'balance[ ] two

16   important interests—the need to hold public officials accountable when they exercise power

17   irresponsibly and the need to shield officials from harassment, distraction, and liability when they

18   perform their duties reasonably.'"  *Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011)

19   (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The doctrine is intended to "give[]

20   government officials breathing room to make reasonable but mistaken judgments about open

21   legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

22                     The two-pronged test currently used for assessing whether qualified immunity

23   applies was first articulated in *Saucier v. Katz*, 533 U.S. 194 (2001).  *Pearson*, 555 U.S. at 232

24   (citing *Saucier*, 533 U.S. at 201).  Under that test, the court first "decide[d] whether the facts that

25   a plaintiff has alleged or shown make out a violation of a constitutional right."  *Id.* (citing, *inter*

26   *alia*, *Saucie*r, 533 U.S. at 201 and Fed. R. Civ. P. 12, 50, 56).  Then, "if the plaintiff [] satisfied

27   this first step, the court [] decide[d] whether the right at issue was 'clearly established' at the time

28   of defendant's alleged misconduct."  *Id.* (citing *Saucier*, 533 U.S. at 201).

                                                        14

1    "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of

2    the party seeking summary judgment." *Tolan*, 572 U.S. at 656 (citations omitted) (per curiam).

3    "This is not a rule specific to qualified immunity; it is simply an application of the more general

4    rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine

5    the truth of the matter but to determine whether there is a genuine issue for trial.'"  Id. (quoting

6    *Anderson*, 477 U.S. at 249); *see also Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005) ("'[T]he

7    ordinary framework for deciding motions for summary judgment' applies to motions for

8    summary judgment based on official immunity.") (citation omitted) (alteration in original).  In

9    particular, in determining the established law, the court must take care not to define either the

10   right at issue, or the defendant's conduct for that matter, in a manner that impermissibly resolves

11   factual disputes.  *Tolan*, 572 U.S. at 657 ("[C]ourts must take care not to define a case's 'context'

12   in a manner that imports genuinely disputed factual propositions.") (citing *Brosseau v. Haugen*,

13   543 U.S. 194, 195 (2004)).

14          Since *Pearson*, courts are "permitted to exercise their sound discretion in deciding

15   which of the two prongs of the qualified immunity analysis should be addressed first in light of

16   the circumstances in the particular case at hand."  555 U.S. at 236.  Here, the court has exercised

17   its discretion and analyzed the first merits prong above as to the excessive force claim, finding

18   plaintiff has satisfied its burden on the first prong of the qualified immunity analysis.

19          Turning to the second prong, the court notes that clearly established law must be

20   defined with a "high 'degree of specificity.'"  *District of Columbia v. Wesby*, 138 S. Ct. 577, 590

21   (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam)); *see also City of*

22   *Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) ("Specificity is especially important in

23   the Fourth Amendment context" (citation omitted)).  This standard is "demanding."  *Wesby*, 138

24   S. Ct. at 589.  The "legal principle [at issue] must have a sufficiently clear foundation in then-

25   existing precedent."  *Id.*  It "must be 'settled law,' . . . , which means it is dictated by 'controlling

26   authority' or 'a robust consensus of cases of persuasive authority,'" rather than merely "suggested

27   by then-existing precedent."  *Id.* at 589−90 (some internal quotation marks and citations omitted).

28

1    "[A] court must ask whether it would have been clear to a reasonable officer that

2    the alleged conduct 'was unlawful in the situation he confronted.'" *Ziglar*, 137 S. Ct. at 1867

3    (quoting *Saucier*, 533 U.S. at 202).  While "a case directly on point" is not required "for a right to

4    be clearly established, existing precedent must have placed the statutory or constitutional question

5    beyond debate," *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v.*

6    *Pauly*, 137 S. Ct. 548, 551 (2017)), and must "'squarely govern[]' the specific facts at issue," id.

7    at 1153 (citing *Mullenix*, 136 S. Ct. at 309).  *See also Pike v. Hester*, 891 F.3d 1131, 1141 (9th

8    Cir. 2018) ("An exact factual match is not required . . . .").  "The rule's contours must be so well

9    defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he

10   confronted.'" *Wesby*, 138 S. Ct. at 590 (quoting *Saucier*, 533 U.S. at 202).  Thus, "[t]he

11   dispositive question is 'whether the violative nature of particular conduct is clearly established.'"

12   *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Mullenix*, 136 S. Ct. at 308) (emphasis,

13   alteration in original).

14          Where the existing cases are "too factually dissimilar to clearly establish a

15   constitutional violation" by an officer's actions, the officer is entitled to qualified immunity.

16   *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019).  However, "[p]recedent

17   involving similar facts can help move a case beyond the otherwise 'hazy border between

18   excessive and acceptable force' and thereby provide an officer notice that a specific use of force

19   is unlawful." *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix*, 136 S. Ct. at 312).  Although "general

20   statements of the law are not inherently incapable of giving fair and clear warning to officers,"

21   *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks and citation omitted), in

22   some circumstances "a general constitutional rule already identified in the decisional law may

23   apply with obvious clarity to the specific conduct in question, even though 'the very action in

24   question has [not] previously been held unlawful,'" *Bonivert v. City of Clarkston*, 883 F.3d 865,

25   872 (9th Cir. 2018) (alteration in original) (quoting *United States v. Lanier*, 520 U.S. 259, 271

26   (1997)).

27          Because resolving whether the asserted federal right was clearly established

28   presents a pure question of law, the court draws on its "full knowledge" of relevant precedent

16

1   rather than restricting its review to cases identified by plaintiff.  *See Elder v. Holloway*, 510 U.S.

2   510, 514−16 (1994).  Ultimately, "the prior precedent must be 'controlling'—from the Ninth

3   Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the

4   relevant jurisdiction." *Sharp v. Cty. Of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (citing *Wilson*,

5   526 U.S. at 617); *see also Carroll v. Carman*, 574 U.S. 13, 17 (2014) (assuming without deciding

6   that controlling circuit precedent could constitute clearly established federal law).

7                   b.        Clearly Established Law as of June 2015

8                   The Supreme Court has assumed without deciding that the law as determined by a

9   Circuit court may constitute clearly established law.  *See, e.g.*, *Kisela*, 138 S. Ct. at 1153 ("[E]ven

10  if a controlling circuit precedent could constitute clearly established law in these circumstances, it

11  does not do so here.") (quoting *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765,

12  1776 (2015)); *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curium)

13  (assuming without deciding that a court of appeals decision may constitute clearly established law

14  for purposes of qualified immunity) (citing *Sheehan*, 135 S. Ct. at 1776).  The Ninth Circuit has

15  stated, "the precedent must be 'controlling—from the Ninth Circuit or Supreme Court—or

16  otherwise be embraced by a consensus of courts outside the relevant jurisdiction.'" *Martinez v.*

17  *City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (some internal quotation marks omitted)

18  (quoting *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017)).

19                  "The dispositive question is 'whether the violative nature of [the officer's]

20  *particular* conduct [was] clearly established" in June of 2015.  *Isayeva v. Sacramento Sheriff's*

21  *Department*, 872 F.3d 938, 947 (9th Cir. 2017) (quoting *Mullenix*, 136 S. Ct. at 308) (emphasis in

22  original).  As explained below, the violative nature of Officer Howard's conduct was clearly

23  established as of June 2015.

24                  i.        Firearm Use

25                  The first question the court must answer is whether it was clearly established at the

26  time of the incident that pointing a gun at a suspect of a minor traffic offense, while the suspect is

27  only passively resisting and is not posing an apparent threat to officer safety, was a violation of

28  the Fourth Amendment.

                                                    17

1         Defendant offers only distinguishable authority involving suspects who were not

2    compliant with an officer's order or who were evading arrest, which is not the case here,

3    construing the record in plaintiff's favor.  Mot. at 15 (citing *Navarro v. Sterkel*, No. 5:11-CV-

4    01700-LHK, 2012 WL 3249487, at *3 (N.D. Cal. Aug. 7, 2012) (plaintiff's arrest reasonable

5    where undisputed plaintiff "removed his hands from the steering wheel, in direct disobedience of

6    repeated police orders"); *Anderson v. City of Bainbridge Island*, 472 F. App'x 538, 540 (9th Cir.

7    2012) (affirming constitutionality of training gun on suspect for long enough to determine suspect

8    was unarmed after suspect "created a dangerous situation by attempting to evade police in a late-

9    night, high-speed chase")).

10         However, as noted above, the burden is on the plaintiff and ultimately the court,

11    not the defendant, to show the right at issue was clearly established.  *Moran v. State of Wash.*, 147

12    F.3d 839, 844 (9th Cir. 1998) (plaintiff bears burden of showing clearly established right); *Elder*

13    *v. Holloway*, 510 U.S. 510, 514–16 (1994) (holding appellate court must review qualified

14    immunity judgment de novo and resolve whether federal right was clearly established in light of

15    its "full knowledge of its own [and other relevant] precedents" (alteration in original) (citation

16    omitted)).  Plaintiff relies primarily on *Green v. City and County of San Francisco*, in which

17    plaintiff was pulled over on suspicion she was driving a stolen vehicle, and several officers

18    pointed their guns at plaintiff, even though she was compliant with the officers' orders.  751 F.3d

19    at 1043, 1052.  Reversing the district court's dismissal on qualified immunity grounds, the Ninth

20    Circuit held "[i]t was established at the time of the incident that individuals may not be subjected

21    to seizure or arrest without reasonable suspicion or probable cause, especially when the stop

22    includes detention and interrogation at gunpoint, and that highly intrusive measures may not be

23    used absent extraordinary circumstances."  *Id.* at 1052.  The Ninth Circuit further addressed the

24    circumstances present here in *Cordeiro v. United States*, 638 F. App'x 634, 636 (9th Cir. 2016),[5]

25

26        [5] The Ninth Circuit has approved of the use of unpublished decisions, in conjunction with
published decisions, to inform qualified immunity analysis.  *Sorrels v. McKee*, 290 F.3d 965, 971

27    (9th Cir. 2002) ("We have held that unpublished decisions of district courts may inform our
qualified immunity analysis.").

28

1    holding "[t]he principle that it is unreasonable to use significant force[6] against a suspect who was

2    suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to

3    have resisted arrest, was . . . well-established in 2001 . . . ." *Id.*; *see also Robinson v. Solano Cty.*,

4    278 F.3d 1007, 1015 (9th Cir. 2002) (holding that "[a]s a general principle . . . pointing a gun to

5    the head of an apparently unarmed suspect during an investigation can be a violation of the

6    Fourth Amendment, especially where the individual poses no particular danger").

7            Genuine disputes of material fact prevent the court from finding, as a matter of

8    law, Officer Howard's actions did not violate the clearly established right described above.

9    Officer Howard pointed a gun at an unarmed suspect, who was stopped only for a minor traffic

10   violation, and who was not resisting arrest.  Given the scene Brown and Officers Villalobos and

11   Moraitis describe, a reasonably jury could conclude Brown was complying with another officer's

12   order to search for his registration and did not present a safety threat: Brown was calmly

13   conversing with Officer Villalobos from the passenger window while Brown searched for his

14   registration, Superior Court Suppression Hearing Tr., ECF No. 59-2, Ex. D at 13:14–17, and

15   Officer Villalobos, who had walked away from the vehicle to run a license check, UF 13,

16   perceived the situation as under control, Villalobos Dep. at 60:13–16.  Moreover, Officer

17   Moraitis, who was standing in a cover position, UF 12, did not appear to perceive a safety threat,

18   as he did not draw his firearm.  Moraitis Dep. at 31:13–18.  The court cannot find that Officer

19   Howard is protected by qualified immunity as a matter of law on this record.  *Newmaker*, 842

20   F.3d at 1116 ("Qualified immunity should not be granted when other evidence in the record . . . is

21   inconsistent with material evidence proffered by the defendant." (citations omitted)).

22   /////

23

---

24   [6] It also was established at the time that pointing a loaded gun at an individual is highly
     intrusive, and therefore more than just significant force.  *See Espinosa v. City & Cty. of San
25   Francisco*, 598 F.3d at 537 (affirming denial of summary judgment on excessive force claim, in
     part because "pointing a loaded gun at a suspect, employing the threat of deadly force, is use of a
26   high level of force"); *see also Robinson v. Solano Cty.*, 278 F.3d 1007, 1015 (9th Cir. 2002) ("[A]
     police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face
27   may not cause *physical* injury, but he has certainly laid the building blocks for a section
     1983 claim against him.") (emphasis in original) (quoting *Petta v. Rivera*, 143 F.3d 895, 905 (5th
28   Cir.1998)).

1         ii.     Taser Use

2       The second pertinent question is whether it was clearly established at the time of

3 the incident that discharging a taser at a suspect of a minor traffic offense, after he exhibited at

4 most passive, non-physical resistance, is a violation of the Fourth Amendment.

5       As of June 2015, it was clearly established that discharging a taser in dart-mode

6 constitutes an intermediate level of force. *Bryan*, 630 F.3d at 826. And "the right to be free from

7 the application of non-trivial force for engaging in mere passive resistance was clearly established

8 prior to 2008." *Gravelet-Blondin*, 728 F.3d at 1093 (citing *Nelson v. City of Davis*, 685 F.3d 867,

9 881 (9th Cir. 2012)). Though the Ninth Circuit has not addressed the exact factual scenario here,

10 the court has made it clear that taser use is excessive in several scenarios in which the plaintiff

11 was resisting officers to a higher degree than Brown. For example, in *Mattos v. Agarano*, 661

12 F.3d 433 (9th Cir. 2011), the Ninth Circuit analyzed two cases in which tasers were used against

13 resistant suspects and held that both instances of taser use were constitutionally excessive. In one

14 case, officers tasered a pregnant woman three times when she refused to get out of her car and

15 "actively resisted arrest" by "physically frustrat[ing] officers' efforts to remove" her from the

16 vehicle by stiffening her arms and clutching the steering wheel. *Mattos*, 661 F.3d at 446. The

17 officer's taser use was deemed excessive, in part because plaintiff's resistance, though "active,"

18 "did not involve any violent actions towards the officers" and there were no other exigent

19 circumstances present. *Id.* at 445–46. In the second case, the court held that the use of a taser,

20 cycled just once, in dart-mode, without warning, was excessive when the plaintiff stood in an

21 officer's way as he attempted to arrest another suspect and physically extended her arm to prevent

22 the officer from pushing against her as he went past. *Id.* at 448–452. The taser use was deemed

23 excessive, in part because plaintiff "posed no threat to officers." *Id.* at 451 (citing *Brown v. City*

24 *of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009) (denying qualified immunity to officers who

25 tasered the passenger of a driver who evaded their initial attempts to pull him over when the

26 passenger refused to hang up the 911 call she made)); *Bryan*, 630 F.3d at 832 (finding use of

27 force excessive where officer tasered plaintiff in dart-mode even though he "was neither a flight

28 risk, a dangerous felon, nor an immediate threat").

1          It was clearly established in 2016 that, when resistance does not involve threats or

2    violence against officers, it is not active enough to warrant the use of intermediate or significant

3    force.  *See Bryan*, 630 F.3d at 832.  Therefore, a reasonable officer would know he was violating

4    the Fourth Amendment by tasering Brown, given that, according to Brown's evidence, Officer

5    Howard had no reason to think Brown was armed, *see* Howard Dep. at 69:5–25, and Brown had

6    only passively resisted his command to exit the vehicle.

7          As such, genuine issues of material facts exist that preclude the court from

8    deciding whether Officer Howard is protected by qualified immunity, and the issue is

9    inappropriate for resolution as a matter of law.  *See Blankenhorn v. City of Orange*, 485 F.3d 463,

10    477 (9th Cir. 2007) (explaining that the court may grant summary judgment "only if Defendants

11    are entitled to qualified immunity on the facts as alleged by the non-moving party" (citation

12    omitted)).  Defendant's motion for summary judgement of plaintiff's excessive force claim is

13    DENIED.

14        B.    <u>Unlawful Arrest Claim – Fourth Amendment</u>

15          Officer Howard also moves for summary judgment on Brown's § 1983 claim for a

16    violation of his Fourth Amendment right against unlawful arrests.  Brown does not dispute that

17    the initial traffic stop was supported by reasonable suspicion that Brown had committed a traffic

18    violation.  *See United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006) ("An

19    investigatory stop of a vehicle is reasonable under the Fourth Amendment if the officer

20    reasonably suspects that a traffic violation has occurred." (citation omitted)).  Rather, Brown

21    alleges that Officer Howard engaged in a de facto arrest once he held Brown at gunpoint and

22    stated that Brown was under arrest, and again when he deployed his taser, and that both arrests

23    were not supported by probable cause.  *See* Opp'n at 11–15.  He also alleges that his formal arrest

24    for violation of Penal Code 148(a)(1) was unlawful because it was not supported by probable

25    cause.  *Id.* at 13–15.

26          The operative question at this juncture is whether and at what point Officer

27    Howard had probable cause to arrest Brown.  As soon as Brown refused to comply with a lawful

28    officer order, a reasonable officer would have probable cause to arrest him for a violation of

1   California Penal Code § 148(a)(1).  *See Young*, 655 F.3d at 1169 (Penal Code § 148(a)(1)

2   "prohibits only refusal to comply with a peace officer's *lawful* orders" (emphasis in original));

3   *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("Probable cause exist[s] if at the moment the arrest

4   was made . . . the facts and circumstances within [the officer's] knowledge and of which they had

5   reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the

6   suspected violated the law]." (internal quotation marks and citation omitted)).  According to

7   Brown, Officer Howard's first order did not come until after he had re-holstered his gun and

8   pulled out his taser.  Brown Dep. 54:20–22.  Officer Howard told Brown to exit the vehicle,

9   which is lawful in the context of an otherwise lawful traffic stop.  *Arizona v. Johnson*, 555 U.S.

10  323, 331 (2009) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the

11  police officers may order the driver to get out of the vehicle without violating the Fourth

12  Amendment's proscription of unreasonable searches and seizures.") (quoting *Pennsylvania v.*

13  *Mimms*, 434 U.S. 106, 111 n.6 (1977) (per curiam)).  Plaintiff argues he did not have time to

14  comply with the order before Officer Howard deployed his taser.  Opp'n at 14 (citing Pl.'s

15  Response to UF 32, ECF No. 59-1).  The evidence plaintiff cites for this proposition suggests

16  Officer Howard and Brown had a verbal exchange before Officer Howard deployed his taser, and

17  about 20 seconds passed between Officer Howard's trying to open the vehicle and when he stuck

18  his taser through the window of the vehicle.  Pl.'s Response to UF 32 (citing Brown Dep. 48:15–

19  24, 51:19–52:9, 54:5–10 & 20–22, 61:3–5, 63:13–64:1 & 11–14, 86:2–12; Howard Dep. 48:6–17,

20  59:22–60:2, 66:3–12, 74:1–5).  This is not sufficient to create a genuine dispute of material fact

21  over whether Brown had adequate time to comply with Officer Howard's order to exit the

22  vehicle, such that the officer did not have probable cause to arrest plaintiff when he deployed his

23  taser.  Accordingly, there is no dispute of material fact over whether Officer Howard had

24  probable cause to arrest Brown at the moment he deployed his taser and when the officers

25  formally arrested Brown.

26          1.      De Facto Arrest

27          As an initial matter, Officer Howard's holding Brown at gunpoint and stating he

28  was "under arrest for fidgeting," constitutes a de facto arrest, drawing all reasonable inferences in

22

Brown's favor.  There is no bright line rule for determining when an investigatory detention is converted into a de facto arrest. *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988); *see also United States v. Sharpe*, 470 U.S. 675, 685 (1985).  The determination of whether a stop has been converted into a full-fledged arrest requires an examination of the totality of the circumstances surrounding the encounter, and each case must be decided on its own facts.  *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) (citing *Parr*, 843 F.2d at 1231).  Holding a suspect at gunpoint does not automatically turn an investigatory stop into an arrest.  *See Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002).  However, the use of the gun combined with Officer Howard's alleged statement that Brown was "under arrest for fidgeting" was sufficient to turn the stop into an arrest, because a reasonable person in Brown's shoes "would not have felt free to leave after a brief questioning," *Allen v. City of Portland*, 73 F.3d 232, 236 (9th Cir. 1995) (citation omitted) (holding that a police officer following a suspect into the restroom and telling her she was "under arrest" constituted an arrest because a reasonable person would not feel free to leave after a brief questioning).  *See United States v. Robertson*, 833 F.2d 777, 781 (9th Cir. 1987) (arrest was effectuated once police encircled the suspect and one officer gave her an order at gunpoint); *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1295 (9th Cir. 1988) (arrest occurred based on detention at gunpoint by police officers who stated they were making an arrest and gave Miranda rights).

## 2. Probable Cause

In order for Officer Howard's de facto arrest to be lawful, he needed to have probable cause to suspect Brown had committed a crime.  *See Delgadillo-Velasquez*, 856 F.2d at 1296.  Officer Howard argues that probable cause existed because Brown had failed to comply with an officer's order.  Mot. at 12–13.  However, if plaintiff's evidence is believed, Brown had not failed to comply with any officer's order when Officer Howard effectuated the de facto arrest.  Brown Dep. at 54:5–22 (stating that Officer Howard did not order him to exit the vehicle until after he pulled out his taser); FAC ¶ 12 ("Officer Howard stuck his gun over the top of the halfway open window.  Holding the muzzle inches from Plaintiff's forehead, Officer Howard told Plaintiff to get out of the vehicle because he was under arrest.").

23

1          Moreover, reading the record in Brown's favor, no reasonable officer would have

2    feared for his safety if he observed the scene Brown describes.  According to Brown's deposition,

3    "right after Villalobos walked off" to run a license check, Brown reached into the back seat

4    "[b]ecause when I pulled out my registration out of the center console, there was a lot of papers.

5    So I was trying to pick the papers that fell behind there because I was trying to find my

6    registration that he asked me to retrieve."  Brown. Dep. at 86:2–12.  Brown also states that, right

7    before Officer Howard confronted him with the gun, Brown was conversing calmly with Officer

8    Moraitis about why he had been pulled over.  Brown Dep. at 48:10–24.  Therefore, the court

9    cannot find that, as a matter of law, Officer Howard's holding Brown at gunpoint and telling him

10   he was under arrest was justified by a concern for officer safety, nor that it was supported by

11   probable cause.

12          Officer Howard's motion for summary judgment on Brown's unlawful arrest

13   claim, as it pertains to the incident described above, is DENIED.  The motion is GRANTED with

14   respect to Brown's unlawful arrest claims for Officer Howard's taser use and for Brown's formal

15   arrest.

16          C.    First Amendment Retaliation

17           "The First Amendment forbids government officials from retaliating against

18   individuals for speaking out."  *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citing

19   *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  To make a claim for retaliation in violation of the

20   First Amendment, a plaintiff must establish: (1) he engaged in constitutionally protected activity;

21   (2) he was subjected to adverse action by the defendant that would chill a person of ordinary

22   firmness from continuing to engage in the protected activity; and (3) there was a substantial

23   causal relationship between the constitutionally protected activity and the adverse action.  *Ariz.*

24   *Students' Ass'n v. Ariz. Bd. Of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citation omitted).  As

25   plaintiff points out, a "significant amount of verbal criticism and challenge directed at police

26   officers" is protected by the First Amendment.  *City of Houston, Tex. v. Hill*, 482 U.S. 451, 460

27   (1987) (hereinafter *Houston*)].  Critical comments made toward police officers are protected

28

24

1   speech "unless shown likely to produce a clear and present danger of a serious substantive evil

2   that rises far above public inconvenience, annoyance, or unrest." *Id.* at 462 (citation omitted).

3          Plaintiff brings a First Amendment retaliation claim for Officer Howard's use of

4   the taser after Brown stated that he did not believe he should have to exit the vehicle.  FAC ¶¶

5   13–16.  Defendant argues that plaintiff's First Amendment claim fails as a matter of law because

6   (1) plaintiff's statement was not protected activity and (2) Brown cannot show a causal

7   relationship between that statement and Officer Howard's deploying his taser.  *See* Mot. at 23.

8                  1.      Protected Speech

9          The crux of defendant's argument that Brown's statement was not protected

10  activity is the notion that "complete non-compliance with a lawful order" is not protected by the

11  First Amendment.  Mot. at 23 (citing *Young*, 655 F.3d at 1170; *Navarro v. Sterkel*, No. 5:11–cv–

12  01700–LHK, 2012 WL 3249487 *7 (N.D. Cal. 2012)).  Defendant's reliance on *Young* is

13  misplaced.  *Young* held that the defendant officer did not violate the First Amendment for

14  arresting plaintiff, because he was arresting him for "his failure to reenter his truck" which "was

15  not an act of expression protected by the First Amendment, but rather a simple failure to obey a

16  police officer's lawful instructions."  *Young*, 655 F.3d at 1170.  Young was "not arrested for

17  protesting" but for his actual noncompliance with the officer's order.  *Id.*  Similarly, in

18  defendant's other case, *Navarro*, plaintiff was arrested for disobeying police instructions by

19  taking his hands off his steering wheel during a traffic stop, not in retaliation for stating he would

20  not take his hands off the steering wheel.  *Navarro*, 2012 WL 3249487, at *7.  Brown does not

21  claim that his arrest was in retaliation for any expressive conduct, nor does he claim that his act of

22  not complying with Officer Howard's order to exit the vehicle was protected speech.

23          Rather, according to his first amended complaint, Brown claims that his statement

24  that he thought he did not need to exit the vehicle was protected speech, and Officer Howard's

25  use of the taser against him was retaliation for that speech.  FAC ¶¶ 13–16.[7]  According to

26

27  _____

    [7] "Plaintiff's right to express his opinion and right to free speech in saying that he
    believed he should not have to get out of the vehicle, upset Howard which then set in motion the
28  following course of events. . . ."

                                    25

1   Brown's deposition, this statement was not made in response to an order from Officer Howard,

2   but was volunteered after Officer Howard told him he was "under arrest for fidgeting."  Brown

3   Dep. at 51:19–52:9, 54:5–10.  Thus, Brown's statement was not "a simple failure to obey a police

4   officer's lawful instructions," but an expression of Brown's opinion regarding the officer's

5   actions, which is protected speech under *Houston*.  *See Duran v. City of Douglas, Ariz.*, 904 F.2d

6   1372, 1378 (9th Cir. 1990) (holding plaintiff's shouting insults at police officer "represented an

7   expression of disapproval toward a police officer" and "as such, it fell squarely within the

8   protective umbrella of the First Amendment"); *Clark v. Cty. of Sacramento*, No. 2:15-cv-1211-

9   JAM-EFB PS (TEMP), 2016 WL 3996333, at *2 (E.D. Cal. July 26, 2016) (finding plaintiff

10  stated a claim for First Amendment retaliation based on her statement that she objected to an

11  officer's illegal search and seizure), *report and recommendation adopted*, No. 2:15-cv-1211-

12  JAM-DB PS, 2016 WL 4541029 (E.D. Cal. Aug. 31, 2016).

13          Officer Howard does not argue that this statement is "likely to produce a clear and

14  present danger of a serious substantive evil" such that it would fall outside the definition of

15  protected speech set forth in *Houston*.  *See Houston*, 482 U.S. at 461.  As such, defendant has not

16  met his burden of showing that this statement was not protected speech as a matter of law.  *See*

17  *Duran*, 904 F.2d at 1378.

18                  2.      <u>Nexus</u>

19          Regarding the nexus between Brown's speech and Officer Howard's use of his

20  taser, Brown introduces evidence to show that Officer Howard discharged his taser at Brown for

21  some reason other than officer safety.  *See* Howard Dep. at 50:5–25 (testifying he did not feel his

22  life was threatened at the time he had the taser out, because otherwise he would have drawn his

23  firearm).  Drawing all inferences in Brown's favor, a reasonable jury could conclude that Officer

24  Howard's use of the taser was proximately caused by Brown's statement, therefore summary

25  judgment is inappropriate.

26          Notably, the Supreme Court has recently held that "probable cause to make an

27  arrest defeats a claim that the arrest was in retaliation for speech protected by the First

28  Amendment." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).  Because this claim is not one for

1    a retaliatory arrest, but rather for a retaliatory use of force, the court declines to grant summary

2    judgment on the basis that Officer Howard likely had probable cause for an arrest at the moment

3    he deployed his taser. *See Am. News & Info. Servs., Inc. v. Gore*, 778 F. App'x 429, 432 (9th Cir.

4    2019) (applying *Nieves* to a First Amendment retaliation claim "to the extent [plaintiff's] arrests

5    are the relevant 'adverse action' at issue).

6                                3.    Claim Raised in Opposition

7              Brown also raises a second claim for First Amendment retaliation in his opposition

8    to defendant's motion for summary judgment, stating "Officer Howard appears to have wrongly

9    assumed that the only conduct at issue was his tasing [sic] of Brown. However, pointing his gun

10   at Brown also constituted a violation of Brown's First Amendment rights." Opp'n at 37–38.

11   However, this claim was not in Brown's first amended complaint, which clearly stated only a

12   claim for conduct that occurred after Officer Howard had already pointed his gun at Brown. FAC

13   ¶¶ 12–14 ("Holding the muzzle [of his gun] inches from Plaintiff's forehead, Officer Howard told

14   Plaintiff to get out of the vehicle . . . . Plaintiff nervously told Officer Howard he was not going to

15   get out of his vehicle . . . .  Plaintiff's right to express his opinion . . . in saying that he believed he

16   should not have to get out of the vehicle, upset Officer Howard which then set in motion to

17   following course of events. . . . [describing Officer Howard's taser use]). **Brown was previously**

18   **given leave to amend for the express purpose of adding the First Amendment claim after**

19   **discovery revealed new facts,** *see* ECF No. 44, **yet he did not use the opportunity to give**

20   **defendants adequate notice of this claim in his amended complaint.** Brown cannot add new

21   claims in his opposition that were not stated in his complaint. *Silva v. Idaho*, No. CV 08-531-S-

22   REB, 2010 WL 529495, at *5 (D. Idaho Feb. 8, 2010) ("It is improper to attempt to raise entirely

23   new claims in a responsive brief to a dispositive motion."); *Wormuth v. Lammersville Union Sch.*

24   *Dist.*, 305 F. Supp. 3d 1108, 1119 (E.D. Cal. 2018) (a party may not defeat a motion for summary

25   judgment "by raising theories that lie outside the scope of their pleadings" (citation omitted)); *cf.*

26   *Morgan v. Brown*, No. 1:17-cv-00425-LJO-JLT, 2018 WL 4385842, at *4 (E.D. Cal. Sept. 14,

27   2018) (allowing plaintiff to raise new facts on summary judgment that had been newly

28

1   discovered, because they were "not so different from those in the FAC to lie outside the scope of

2   the pleadings" and it was clear that "Defendant was aware of the discovered facts").[8]

3           Therefore, the court only addresses the First Amendment claim as it is outlined in

4   the first amended complaint.

5           D.      Malicious Prosecution Claim

6           "To maintain a § 1983 action[9] for malicious prosecution, a plaintiff must show that

7   'the defendants prosecuted her with malice and without probable cause, and that they did so for

8   the purpose of denying her [a] specific constitutional right.'" *Smith v. Almada*, 640 F.3d 931, 938

9   (9th Cir. 2011) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)).  A

10  plaintiff can bring a malicious prosecution claim not only against prosecutors but also against

11  police officers who wrongfully caused his prosecution.  *Id.* (citation omitted).  To succeed, a

12  plaintiff must show a "retaliatory motive on the part of an official urging prosecution combined

13  with an absence of probable cause supporting the prosecutor's decision." *Beck v. City of Upland*,

14  527 F.3d 853, 865 (9th Cir. 2008).

15          Brown's claim is based on his allegation that Officer Howard omitted from his

16  police report that he held Brown at gunpoint, Howard falsely stated in his report that he tasered

17  Brown only after Brown "reached down with his right arm toward the floorboard and appeared to

18  be reaching toward the bottom of the passenger seat," Opp'n at 41, and that Howard falsely stated

19  in his report that he found cocaine in Brown's car, UF 58.

20          Brown does not defend his malicious prosecution claim with respect to Officer

21  Howard's falsely stating he found cocaine in Brown's car, *see* Opp'n at 40–41, and Brown does

22  _____

23          [8] The court notes that, later in the complaint, plaintiff states: "The force applied by Officer
    Howard, and the use of the taser on Plaintiff, was in retaliation for Plaintiff exercising his First
24  Amendment rights."  FAC ¶ 21.  While this allegation could be read to encompass Officer
    Howard's use of force when he points his gun at Brown, such a reading would be a stretch and
25  the context implies otherwise.  Rather, it does appear plaintiff is now attempting to introduce a
    new claim through his opposition.
26          [9] In his complaint, Brown brings a claim for "Malicious Prosecution in Derogation of
27  Plaintiff's Constitutional Rights Under the U.S. Constitution."  FAC at 6.  Though the complaint
    does not reference § 1983 specifically, for the purpose of this motion, the court assumes based on
28  the claim's wording that the malicious prosecution claim is brought under § 1983.

1   not offer any evidence supporting his claim that the statement was false other than his own

2   deposition testimony, which is generally insufficient to support a claim for malicious prosecution,

3   *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994).

4          As for Howard's alleged omission of the use of his firearm, *Blankenhorn* suggests

5   such an omission of possibly excessive force in a police report may negate any probable cause to

6   charge the victim of resisting arrest.  485 F.3d at 484.  On this basis, plaintiff's malicious

7   prosecution claim survives summary judgment, and the court need not inquire into whether the

8   remaining omission is grounds for a malicious prosecution claim.

9          Officer Howard's motion for summary judgment on Brown's malicious

10  prosecution claim is GRANTED.

11  IV.    CONCLUSION

12         Plaintiff has not provided sufficient evidence to support a malicious prosecution

13  claim.  As to this claim, defendant Officer Howard's motion for summary judgment is

14  GRANTED.

15         Plaintiff has pointed to sufficient evidence to defeat summary judgment on his

16  § 1983 claims for violation of his Fourth Amendment rights and for First Amendment retaliation.

17  Having demanded a jury trial, plaintiff is entitled to have a jury, not this court, decide the critical

18  questions of fact underlying his claims.  *See* U.S. Const. Amend. VII; *see also Tolan*, 572 U.S. at

19  660 ("The witnesses on both sides come to this case with their own perceptions, recollections, and

20  even potential biases.  It is in part for that reason that genuine disputes are generally resolved by

21  juries in our adversarial system.").  Plaintiff may proceed with his claim for excessive force based

22  on both Officer Howard's firearm use and his taser use, his claim for unlawful arrest based on

23  Officer Howard's firearm use, his claim for First Amendment retaliation based on Officer

24  Howard's taser use, and his claim for malicious prosecution.  As to these claims, defendant's

25  motion for summary judgment is DENIED.

26         Based on plaintiff's representations, he wishes to dismiss his claims against the

27  remaining defendants, and intends to file a stipulation of dismissal "once a formal release

28

1    agreement has been finalized." Opp'n at 6 n.1. Within 14 days of this order, the parties SHALL

2    either file said stipulation or file a joint status report explaining why they choose not to.

3                  Plaintiffs' request for a status conference, ECF No. 64, is DENIED as moot.

4                  IT IS SO ORDERED.

5    DATED:  August 14, 2020.

6                                        CHIEF UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28